**WEEDIN, Commissioner of Immigration, v. NG BIN FONG.** *

Circuit Court of Appeals, Ninth Circuit.
March 19, 1928.

No. 5301.

1. Aliens ⟨⇒⟩32(8)—Department may disregard testimony of witness that applicant for admission was minor son, where witness falsely testified on original hearing.

Immigration officers are not bound to believe testimony of witness that applicant for admission was minor son born in China, where such witness falsely testified in former hearing as to admittance into Canada.

2. Aliens ⟨⇒⟩32(9)—Evidence supporting contention that applicant was minor son of resident Chinese merchant held not to render decision denying admission arbitrary or capricious.

Evidence as to applicant's right to enter United States as minor son of resident Chinese merchant *held* not so conclusive as to require favorable finding as matter of law, or to show that immigration officers acted arbitrarily or capriciously in denying admission.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Application for habeas corpus by Ng Bin Fong against Luther Weedin, as United States Commissioner of Immigration at the Port of Seattle, Washington. The writ was granted (20 F.[2d] 1014), and the Commissioner appeals. Reversed, with directions.

*Rehearing denied April 30, 1928.

Thos. P. Revelle, U. S. Atty., and Anthony Savage, Asst. U. S. Atty., both of Seattle, Wash. (John F. Dunton, U. S. Immigration Service, on the brief), for appellant.

John J. Sullivan and George E. Mathieu, both of Seattle, Wash., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. The appellee, a Chinese youth about 19 years of age, was born in China and has never been in this country. On January 19, 1927, he sought admission at the port of Seattle upon the ground that he was the minor son of a resident Chinese merchant. In due course hearings were had, which resulted in a denial of his application by the Immigration Department for the reason, as held, that the alleged relationship was not satisfactorily shown. Thereupon his petition for a writ of habeas corpus was granted, and the Commissioner of Immigration appeals.

The evidence upon which exclusion was ordered, consists of the testimony of the applicant himself, of his alleged father, Ng Chee Yick, and of a Chinese schoolmate of the applicant, now in this country as the son of a resident merchant. It is shown that Ng Chee Yick was admitted to the United States in 1923, from Canada, as a merchant. Upon the original hearing he testified that he came to Canada from China in 1916 as a steerage passenger, landing at Vancouver on the payment of the $500 head tax then required under the Canadian law. Upon investigation, following the hearing, no Canadian record of his entry could be found, and upon being recalled for further interrogation he admitted that the testimony he had given was untrue, and further testified that under an arrangement with one of the ship's officers he had been clandestinely landed in Canada, and that in 1923 he had procured the requisite certificates for admission to the United States, by impersonating one of his countrymen, of the same name, whose Canadian record was regular.

[1, 2] Clearly, under such circumstances, the immigration officers were not bound to believe his testimony. And, as was held by the department, if his testimony is rejected, there is left no direct evidence that he was in China at a time requisite to his alleged paternity. If, as he claims, Ng Chee Yick left China in 1916, the applicant would have been 7 or 8 years of age, and it must be conceded that his testimony is persuasive to the effect that

prior thereto they had lived together in the same home, apparently as father and son; but, being an interested witness, his testimony alone would not, as a matter of law, make it incumbent upon the immigration officers to believe or admit him.

The testimony given by the schoolmate, Lock Moon Din, is but remotely corroborative. He resided in another village, and was never in the applicant's home, or in the village where he was born. In short, he had no personal knowledge of the applicant's family or his home. He became acquainted with him at a boarding school, where they roomed together for about 2½ years, and in 1925, after he had come to this country, he, for the first time, met Ng Chee Yick, who was then associated with his father in a business concern at Seattle. Asked what applicant had told him about his father, while they were in school, he answered that he had never said much about his family or his father in this country, but he had told him his father was paying his expenses, and he, the applicant, received numerous letters from his father; that he had read such letters two or three times, and they were "addressed to 'my son' from 'father.'" He never saw any money in the letters, but he thought that once or twice he saw one which stated money had been sent home to the family. He had never learned whether the applicant had any brothers or sisters. The Board of Special Inquiry certified that no resemblance whatever was noted between the applicant and the alleged father. Upon this record we cannot say that the immigration officers acted arbitrarily or capriciously, or that the evidence was so conclusive in character that as a matter of law it required a favorable finding of the requisite relationship. Apparently the hearing was fairly conducted, and no substantial irregularity is disclosed.

Accordingly the judgment is reversed, with directions to dismiss the petition.